UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

      Plaintiff,

vs.                                           Civ. No. 12-394 KBM/ACT

OFFICER DANIEL BACA, OFFICER JENNIFER
JARA, OFFICER LEAH KELLY AND OFFICER
JACOB WELCH, individually and in their official capacities
as police officers for the ALBUQUERQUE POLICE
DEPARTMENT,

      Defendants.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO COUNT I OF HIS COMPLAINT AGAINST DEFENDANTS JACOB WELCH AND
JENNIFER JARA AND MEMORANDUM IN SUPPORT THEREOF**

      Plaintiff Alfonso Hernandez, through counsel, AEQUITAS LAW, LLC, Anna C. Martinez, hereby moves this Court for an order granting his motion for partial summary judgment pursuant to Rules 56(a) and (c) of the Federal Rules of Civil Procedure as to Count I against Defendant Jennifer Jara and Defendant Jacob Welch. As grounds in support of this motion, Plaintiff states:

## BACKGROUND

      This case is the result of the City of Albuquerque's decision to use the criminal justice system to force Plaintiff to take his unsightly activities—that, is sharing food with other residents of the City, including homeless people—elsewhere. The police officers in this case were not acting in a vacuum or even on their own initiative. Then Public Safety Director Darren White let these and other officers "take of[f] the gloves and deal with some real issues of concern…" *Exhibit A*: Email from APD Sargent Lisa Kukowski to Defendants Jara and Welch and others. Acting as though sharing food with other people is a crime, the Albuquerque police department

was dispatched to the Fourth Street Mall because "[t]hese folks need to be identified, their names, their organization, do they have a business permit? Who gave them the permission to feed the homeless at all?" and, with this "issue[] of concern" in mind, Defendants were sent to the Fourth Street Mall to "take progressive enforcement action. This is the intelligence gathering session. If they are not permitted, we will CT [criminal trespass] them next, then cite them, then arrest them." *Id*.

Defendants plan all along was to find a reason to arrest Plaintiff and force him to stop ministering to the hungry at the Fourth Street Mall. This case boils down to a "directive" to rid the Fourth Street Mall of the unsightly homeless people gathering there to eat food on Sunday afternoons. Sgt. Kukouwski's email laid out the game plan: even though permits are not needed to give food away to other residents, the officers were to issue criminal trespass notices to anyone giving out food. Anyone caught distributing food after being issued that notice would then be arrested. Defendants followed their superiors' game plan and, in so doing, violated Plaintiff's rights.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  Residents of the City of Albuquerque who wish to share food at no cost and with no connection to any business or commercial interests do not need a permit to do so.

2.  On August 8, 2010, Defendant Welch handcuffed and detained Plaintiff as a result of Plaintiff's lawful actions, to wit: sharing food with the hungry on public property. See, generally, *Exhibit B* to Defendant's Motion for Summary Judgment, Affidavit of Jacob Welch.

3.  On August 8, 2010, issued a "Criminal Trespass Notification---Order Not to Return" ("notice") purporting to bar him from entering or remaining "on or about the property located at 110 4th Street NW ("Park")." The address listed on the notice is a piece of private

2

property that houses the Telephone Museum of New Mexico. See *Exhibit B*: criminal trespass notice; *Exhibit C*: City of Albuquerque Geographical Information System Data.

4. The address for the Fourth Street Mall is 100 Fourth St. NW. *Id*.

5. The entirety of the facts demonstrate that the purpose of the criminal trespass notice was to prevent the plaintiff from distributing food to homeless persons, an activity not prohibited by law or regulation.

6. The criminal trespass notice was issued to Plaintiff because he was sharing food with other people on the Fourth Street Mall. See, generally, *Exhibit B to Defendant's Motion* for Summary Judgment, Affidavit of Jacob Welch.

7. Defendant Welch had no valid legal basis for handcuffing and threatening Plaintiff, issuing the Order, or prohibiting Plaintiff from entering the Fourth Street Mall (or private property near the Mall) to distribute food or for any other lawful purpose. *Id*.

8. There is no evidence that Plaintiff was engaged in any activity that would justify the issuance of the notice.

9. On September 12, 2010, Defendant Jennifer Jara went to the Fourth Street Mall on a "directive from [her] commander. *Exhibit D*: Transcript of Trial de novo in criminal case number D-202-LR-2011-0007 at pp. 15-16.

10. Defendant Jara's "directive" came from her commander, Ray Mason. *Id*.

11. Defendant Jara's "directive" was to make sure that all groups feeding the homeless were identified and to find out if the members of these groups had a permit. *Id*.

12. Defendant Jara came in contact with Plaintiff at the Fourth Street Mall on September 12, 2010. *Id*.

13. In fact, Defendant Jara has testified that she never even saw Plaintiff give any food to anyone. *Id*. at 20.

14. On January 11, 2011, Plaintiff was tried in the Bernalillo County Metropolitan Court. The charge of distributing food without a permit was dismissed on the grounds that there was no legal requirement that he have a permit to do so. He was convicted of Criminal Trespass and Refusing to Obey an Officer.

15. On June 28, 2011, a de novo trial was held before the Second Judicial District Court. *Exhibit D* at p. 1.

16. On July 11, 2011, the Second Judicial District issued an Order reversing the convictions. The written Order found that the charge of Criminal Trespass was not supported by the evidence and dismissed the charge with prejudice. *Exhibit E*: Order by Hon. Stanley Whitaker in case number D-202-LR-2011-0007, dismissing remaining charges against Plaintiff.

17. The Court's written order also dismissed the charge of Refusing to Obey a Law Enforcement Officer with prejudice, entering the following specific findings:

   a. The encounter between Defendant Jara and the plaintiff quickly became non-consensual, requiring that Jara have reasonable suspicion that the plaintiff was engaging in or about to engage in criminal conduct;

   b. Defendant Jara had no legal basis to approach the plaintiff and begin questioning him.

   c. The plaintiff presented no public safety concerns and was engaging in no criminal conduct.

   d. "Officer Jara's mistaken belief that [Plaintiff] needed a permit to dispense food in this public area cannot act as the basis for reasonable suspicion to basically seize and ultimately arrest [Plaintiff] who is otherwise acting lawfully under these circumstances." *Id*.

18. There were no public safety concerns presented by Plaintiff Alfonso Hernandez. *Id*.

4

19. Plaintiff Alfonso Hernandez was not engaged in any criminal conduct. *Id*.

20. There is no dispute that Defendant Jacob Welch was also present when Defendant Jennifer Jara arrested Plaintiff on September 12, 2010. *Exhibit B to Defendant's Motion* for Summary Judgment, Affidavit of Jacob Welch.

## **STANDARD FOR SUMMARY JUDGMENT**

The movant for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (19386). Summary judgment is proper if there are no genuine issues of fact and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Celotex* , 477 U.S. at 323. Once the moving party has produced evidence showing a lack of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence creating a genuine issue of material fact to be resolved at trial. *Vitkus v. Beatrice Co*., 11 F.3d 1535, 1539 (10th Cir. 1993); *Thomas v. Wichita Coca-Cola Bottling Co*., 968 F.2d 1022, 1024 (10th Cir. 1992). To avoid summary judgment, the non-moving party must present more than "a mere scintilla of evidence." *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 782 (10th Cir. 2005). Because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the party opposing summary judgment "'must set forth specific facts showing that there is a genuine issue for trial,'" *Anderson*, 477 U.S. at 250 (*quoting* Fed. R. Civ. P. 56).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. In this case, there are simply no genuine issues of

material fact with respect to any of Plaintiff's claims. Without probable cause or any other lawful reason to do so, Defendant arrested Plaintiff and used force on him. Because the law clearly prohibits a) arrests unsupported by probable cause; as well as b) the use of any force to effectuate an unlawful arrest, Plaintiff is entitled to summary judgment as to liability against Defendants Jara and Welch. The only issue for trial is the amount of damages suffered by Plaintiff as a result of being illegally detained on August 8, 2010 and illegally detained and arrested on September 12, 2010 and being subjected to unlawful force effecting those detentions.

## LEGAL ANALYSIS

### I. Defendant Jacob Welch Issued a "Criminal Trespass Notice" to Plaintiff for a Separate Property and Without Legal Justification

#### A. 110 4th Street NW is the AT&T Museum

It is undisputed that the criminal trespass notice that Defendants claim was issued to Plaintiff was issued for: "110 4th St. NW (Park)." It is also undisputed that the Fourth Street Mall is located at 100 4th Street NW. As a result, even if Defendant Welch had lawfully issued the criminal trespass notice—a claim that Plaintiff disputes—the notice was deficient. It did not identify the address that Plaintiff was at/on when Defendant Jara arrested him. Plaintiff was not at, nor had he been at, 110 4th Street NW when Defendant Jara detained and arrested him. That deficiency alone undermines any claim that Plaintiff was violating the notice.

#### B. An Unlawful Criminal Trespass Notice Cannot form the Basis for a Lawful Arrest

The criminal trespass notice issued to Plaintiff was issued to him because he was sharing food with other residents of the City. Plaintiff does not limit who he shares food with, but it is true that the vast majority of the people who come to eat at the Fourth Street Mall on Sundays are homeless or downtrodden. Plaintiff does this out of his deeply held religious beliefs. As the

6

Second Judicial Court's holding makes clear, there is no requirement that one person possess a permit to give other people food in this City. The entire basis for issuing the criminal trespass notice was to prevent Plaintiff from engaging in perfectly legal behavior. Under the admitted facts of this case, there was no lawful reason to issue a criminal trespass notice, even if that notice had been issued for the proper address.

**I. Defendant Jara Falsely Arrested and Imprisoned Plaintiff**

*A. Defendant's Actions Constituted an Arrest*

"A person is seized within the meaning of the Fourth Amendment when a reasonable person would believe that he or she is not free to leave." *Roska v. Peterson*, 328 F. 3d 1230, 1243 (10th Cir. 2003)(*citing Graham v. Connor*, 490 U. S. 386, 395 (1989); *Brower v. County of Inyo*, 489 U. S. 593, 599 (1989); *Florida v. Bostick*, 501 U. S. 429, 435 (1991)). A police action is deemed to be a seizure when a reasonable person must think he or she is unable to decline the officers' requests. See *Petersen v. Farnsworth*, 371 F. 3d 1219, 1222 (10th Cir. 2004). Defendant Jara has argued that she initially only detained Plaintiff, but that she subsequently arrested him. The point at which the arrest occurred is not, for the purposes of this Motion, critical. The undisputed material facts demonstrate that Plaintiff was not temporarily detained. As Defendant's actions went far beyond the "de minimus intrusions upon liberty" that are permissible during a "*Terry* stop to advance officer safety, such as a frisk for weapons or a request to step out of the car during a traffic stop." *United States v. Meledez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994). The "use of force such as handcuffs and firearms is a far greater level of intrusion and requires the government to demonstrate that the facts available to the officer would warrant a man of reasonable caution to believe that the action taken was appropriate. *Melendez-Garcia*, 28 F.3d 1052 (internal citations and quotations omitted). If the

7

government fails to carry that burden, as it has here, then the intrusion is considered an arrest. *Id*., at 1053.

### B. Defendant Jara's Decision to Detain Plaintiff without Reasonable Suspicion and then Arrest and Imprison Plaintiff without Probable Cause Violated the Protections afforded Plaintiff by the Fourth Amendment

By arresting Plaintiff without probable cause to believe that he had committed a crime, Defendant violated the Fourth Amendment. The Fourth Amendment prohibits arrests unsupported by probable cause. U.S. Const. Amend. IV; *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Baptiste v. J.C. Penny Co*., 147 F.3d 1252, 1256 (10th Cir. 1998) (internal quotations and citations omitted). "[T]he probable cause standard of the Fourth Amendment requires officers to **reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all** before invoking the power of warrantless arrest and detention." *Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995).

### C. Defendant Jara Could Not Ignore her Obligation to Investigate the Basis of the Criminal Trespass Order, when the Officer who had Issued the Trespass Notice was at the Scene at the Time that She Arrested Plaintiff.

In making probable cause determinations, officers may err as to the credibility of witnesses, but "they may not ignore available and undisputed facts." *Id*. "[L]aw-enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances." *Kuehl v. Burtis*, 173 F.3d 640, 650 (8th Cir. 1999); *see also BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (A police officer "may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of

investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place.")

Defendant violated those principles by arresting Plaintiff without so much as conducting an investigation into whether Plaintiff had committed **any** crime and whether there had been any lawful, legitimate basis for issuing the "criminal trespass notice" to Plaintiff by Defendant Welch. Defendant Welch was at the scene and Defendant Jara could have easily determined that the criminal trespass notice was unlawfully based upon lawful behavior. Before arresting Plaintiff, a reasonable officer would have conducted an independent investigation to determine whether Plaintiff was suspected of a crime and, in this case, that investigation should have included asking Defendant Welch: "why did you issue a trespass notice" and "was the notice issued for the Fourth Street Mall." Either question would have quickly uncovered the fact that Plaintiff was not violating the law—the trespass notice was written for the address of a nearby business and, more importantly, the trespass notice was written without any lawful justification or authority to issue the notice.

There is no dispute that Plaintiff was not violating the law by sharing food with the hungry. He was not violating the law on August 8th and he was not violating the law on September 12th. Without probable cause to believe that such a violation was occurring or had occurred (thereby necessitating the issuance of a criminal trespass notice) there was no justification to detain, much less arrest Plaintiff.

## II. Defendant Used Excessive Force on Plaintiff, By Using Force Where No Force Was Necessary

*A. The Undisputed Material Facts Establish that Defendant violated Plaintiff's Fourth Amendment Right Not to be Subjected to Excessive Force*

9

By falsely arresting Plaintiff in violation of the Fourth Amendment, Defendant Jara necessarily used excessive force. When an officer has the legal right to make an arrest, that right "carries with it the right to use some degree of physical coercion." *Graham v. Connor*, 490 U.S. 356, 396 (1989). The flip side of that coin is that when one does not have a legal right to make an arrest, there is no right to use any degree of force. *Id*. Once an officer has unconstitutionally interfered with an innocent citizen's liberty, all subsequent actions are unconstitutional *per se*. See *Baptiste*, 147 F.3d at 1256 n.7 ("Because this court concludes that there was not probable cause to support the warrantless arrest, the pat-down search incident to arrest was also improper.").

Claims of excessive force by arrestees detained without a warrant are governed by the "objective reasonableness" standard of the Fourth Amendment. *Frohmader v. Wayne*, 958 F.2d 1024 (10th Cir. 1992). Courts usually rely on three factors to assist in this "reasonableness" determination: (1) the severity of the crime at issue; (2) whether the suspect poses all immediate threat to the safety of the officers; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Hinton v. City of Elwood*, 997 F.2d 774, 780 (10th Cir. 1993)(*citing* Graham, 490 U.S. at 396 (1989)). However, the usual excessive force case involves a plaintiff against whom force was used based on probable cause that the plaintiff committed a crime or posed a threat to the safety of others. This case is completely different. The three factors used in typical cases are simply not instructive because they assume the arrest was lawful from its inception.

Because Defendant Jara lacked probable cause to arrest Plaintiff and had no reason to believe that Plaintiff posed any threat to Defendant or anyone else, she had no right to use any force against Plaintiff. If this Court determines that Plaintiff should prevail on his unlawful arrest

claim, it must necessarily find for him on his corresponding excessive force claim. Plaintiff has already proven that Defendant illegally arrested him. Even if an investigative or *Terry* stop was justified—which Plaintiff does not concede—"handcuffing of the suspect is not ordinarily proper." 4 Wayne R. LaFave, Search and Seizure § 9.2(d) (3d ed. 1996)(internal quotations and citations omitted); See, *e.g.*, *United States v. Shareef*, 100 F.3d 1491, 1506 (10th Cir. 1996)(restraining suspects during a *Terry* stop reasonable where suspects posed threat to officer safety); *Terry v. Ohio*, 392 U.S. 1 (1968). This case involved the detention and arrest of Plaintiff while acting in a completely lawful and even admirable manner. There was no reasonable suspicion to believe Plaintiff had committed a crime. Consequently, precedent that permits force to be used during the course of a lawful detention and/or a lawful arrest cannot save Defendants in this case. Handcuffing Plaintiff in support of an illegal arrest was excessive force.

### *B. Physical Injury is Not Required for Plaintiff to Establish that He was Subjected to Excessive Force During an Unlawful Arrest*

That Defendant did not inflict serious physical injuries on Plaintiff does not change the fact that Defendant used excessive force in the course of unlawfully detaining, handcuffing, and arresting Plaintiff. In fact, in order to succeed in his claim of excessive force, Plaintiff need not even prove any physical injury whatsoever. See *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001)(physical injury may be the most obvious injury that flows from the use of excessive force. Yet the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests, a person's sense of security and individual dignity). Where damages might be considered *de minimus* in the context of a *lawful* arrest, this case involves the use of force to effect an unlawful arrest.

## **CONCLUSION**

The undisputed material facts demonstrate that, even in the light most favorable to Defendants Jara and Welch, they cannot avoid liability for their unlawful actions. Consequently, for the reasons set forth herein, the Court should enter summary judgment Plaintiff's favor as to liability on the claims brought in Count I of his Complaint against Defendants Jennifer Jara and Jacob Welch.

                                      Respectfully Submitted:
                                      **AEQUITAS LAW, LLC**

                                      /s/
By:                                  _____
                                      Anna C. Martinez
                                      Attorney for Plaintiff
                                      P.O. Box 25304
                                      Albuquerque, NM  87125
                                      (505) 750-8005
                                      anna@aequitas.pro

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was delivered to opposing counsel via the Court's CM/ECF document filing and delivery service on May 15, 2013.

/s/
_____
Anna C. Martinez