UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

        Plaintiff,

vs.                          Civ. No. 12-394 KBM/ACT

OFFICER DANIEL BACA, OFFICER JENNIFER
JARA, OFFICER LEAH KELLY AND OFFICER
JACOB WELCH, individually and in their official capacities
as police officers for the ALBUQUERQUE POLICE
DEPARTMENT,

        Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

        Plaintiff, through counsel, AEQUITAS LAW, LLC, Anna C. Martinez and Albert L. Hutchinson, Jr. hereby propounds his Response in Opposition to Defendants' Motion for Summary Judgment and states:

**RESPONSE TO DEFENDANTS' PROPOSED
STATEMENT OF UNDISPUTED MATERIAL FACTS.**

    1.    Admitted.

    2.    Plaintiff admits, for the purposes of this motion, that he did not speak to anyone to find out what permits might be needed to allow him to share food with others at the Fourth St. Mall. However, Plaintiff specifically denies that that any permit is needed to share food with other Albuquerque residents without charge when such sharing is not part of any commercial venture. *Exhibit A: Affidavit of Plaintiff* at ¶4; *see also Exhibit E to Plaintiff's Motion for Summary Judgment* at p. 2.

3. Denied. Plaintiff denies that there were any complaints from surrounding business. The only evidence that Defendants have presented to support this claim is the inadmissible hearsay contained within their affidavits.

4. Denied. Plaintiff specifically denies that any permit is needed to share food with other Albuquerque residents without charge when such sharing is not part of any commercial venture. Plaintiff further denies that there were any complaints from surrounding business. The only evidence that Defendants have presented to support this claim is the inadmissible hearsay contained within their affidavits.

5. Admitted.

6. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff admits that he was sharing food on August 8, 2010. Plaintiff admits that Officer Welch approached him. Plaintiff admits that Officer Welch asked Plaintiff if Plaintiff had a permit. Plaintiff denies that he told Officer Welch that he did not have a permit. Plaintiff admits that he told Officer Welch that he did not need a permit. Plaintiff denies that Officer Welch told him he needed to contact a homeless shelter and work under their permit. Plaintiff admits that Officer Welch told him he needed to contact a specific group, Joy Junction, and work under their permit. Plaintiff denies that he told Officer Welch that he was not going to stop serving food. Plaintiff admits that he told Officer Welch that he did not need a permit in order to share food. Plaintiff further admits that he did in fact continue to share food.

7. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff admits that he continued to share food on August 8, 2010. Plaintiff admits that Officer Welch informed him that Plaintiff needed a permit in order to share food. Plaintiff further admits that he told the officers present on August 8, 2010 that he was

exercising his religious rights and that the officers did not have a right to prevent him from sharing food.

8. Plaintiff objects to this purported undisputed material fact because it is actually a legal conclusion. The determination of whether or not Plaintiff was seized falls within the purview of the Court and the jury. Plaintiff admits that at the beginning of the interaction on August 8, 2010 he was not handcuffed. Plaintiff denies that he was free to leave. Exhibit A: Affidavit of Plaintiff at ¶¶ 14-19.

9. For the purposes of this motion, Plaintiff admits that Officer Welch ordered him to stop sharing food unless he could produce a valid permit. Plaintiff denies that he "ignored" this "directive" and continued to share food. Plaintiff admits that he continued to try to share food, but states that his attempts were thwarted by Officer Welch. *Exhibit A* at ¶¶ 27-28.

10. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff denies that he continue to share food. Plaintiff admits that he continued to try to share food. Plaintiff denies that any "large crowd of people started to shout 'Let's start a riot' and 'F*ck the police.'" Plaintiff admits that two or possibly three people made statements like "Let's start a riot" and "F*ck the police." *Exhibit A* at ¶ 20.

11. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff admits that Officer Lonz removed Plaintiff from the crowd. Plaintiff admits that Officer Lonz handcuffed him. Plaintiff denies that the crowd was "becoming disorderly and incited by" Plaintiff's actions. *Exhibit A* at ¶¶ 31-32.

12. Admitted.

13. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff admits that he was removed from the scene and locked

in the cage of a police car. Plaintiff denies that the crowd was not already calm when he was handcuffed and put in the cage of the police car. Plaintiff admits that he was in the cage of the police car and in handcuffs for approximately 20 min. *Exhibit A* at ¶¶ 31-32.

      14.     Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff denies that the crowd was not already calm when he was handcuffed. Plaintiff admits that Officer Welch released him from the cage of the police car and removed the handcuffs from his wrists. Plaintiff admits that he was issued a citation for not having a permit. Plaintiff admits that he was issued a criminal trespass notification for 110 4th St. NW, Albuquerque, New Mexico. *Exhibit A* at ¶¶ 31-32; *see also Exhibit B to Plaintiff's Motion for Summary Judgment*.

      15.     Denied. Before Plaintiff left the Fourth St. Mall on August 8, 2010 Officer Welch lectured Plaintiff about the Bible. Officer Welch made statements about the Bible and authority figures. Plaintiff did not wish to engage in a theological discussion with Officer Welch and admits that at that time he told the people gathered on the Fourth St. Mall to meet him at Immaculate Conception church, which is located at Seventh and Copper. Plaintiff then left the premises and did not have any further contact with Officer Welch on August 8, 2010. *Exhibit A* at ¶¶ 38-42.

      16.     Admitted.

      17.     Admitted, in part. Plaintiff admits that the officers who arrived at the Fourth St. Mall observed people sharing food with others. Plaintiff denies that the officers observed him sharing any food at that time.

18. Denied. Officer Kelly had contact with Plaintiff while he was in a holding cell, before he was transferred to the Bernalillo County Metropolitan Detention Center. *Exhibit A* at ¶¶ 85-99.

19. For the purposes of this motion, admitted.

20. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff denies that Officer Welch arrived on the scene after Officer Jara. Plaintiff admits that Officer Welch told Officer Jara that Officer Welch had issued a Criminal Trespass Notification to him on August 8, 2010. Plaintiff admits that he did not answer any questions that Officer Jara asked him.

21. Plaintiff admits that he was loading boxes into his truck. For the purposes of this motion, Plaintiff admits that his truck was parked illegally.

22. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff admits that he was issued a parking citation. Plaintiff denies that Officer Jara verified the existence of the Criminal Trespass Notification. If she had done so, she would have determined that the Criminal Trespass Notification was issued for 110 Fourth St. NW, Albuquerque, New Mexico, which is not the address of the Fourth St. Mall. In addition, any verification of the Criminal Trespass Notification would have included an inquiry into the basis for the issuance of the Criminal Trespass Notification. Based upon the fact that the Criminal Trespass Notification was issued without any lawful reason and the officer who issued the notification was present at the scene, Plaintiff denies that the actions taken by Officer Jara can be described as "verifying" the Criminal Trespass Notification.

23. Plaintiff objects to the form of this claimed undisputed material fact because it contains multiple factual claims. Plaintiff admits that Officer Baca forcibly escorted him away

5

from the people gathered at the Fourth St. Mall. Plaintiff admits that Officer Baca handcuffed him. Plaintiff does not know what the "standard handcuffing techniques" are, but for the purposes of this motion admits that Officer Baca used "standard handcuffing techniques." Plaintiff admits that officer Baca transported him to the Prisoner Transport Center. Plaintiff admits that Officer Baca did not search him. Plaintiff denies that officer Baca did not seize him.

24. Admitted.

25. Admitted.

26. Plaintiff admits that at the time that she was placing the handcuffs on Plaintiff, Defendant Jara did not use force, or strike, or take Mr. Hernandez down to the ground.

27. Admitted.

28. Denied.

29. Denied in part. Admitted in part. Plaintiff denies that he claims that after he slipped out of the handcuffs he was attacked. Instead, Plaintiff admits that he claims that he was attacked after he had already been re-handcuffed.

30. Admitted.

31. Admitted.

32. Admitted.

33. Denied. Plaintiff denies that during the time that his criminal charges were pending he openly shared food at the Fourth Street Mall. Plaintiff admits that after his criminal charges were dismissed he openly shared food there.

## ANALYSIS

*I. Plaintiff was unreasonably seized on August 8, 2010 before he was handcuffed.*

Defendants allege that Alfonso Hernandez was not seized on August 8, 2010 until he was placed in handcuffs. This allegation is not true. Plaintiff was "pinned in" by Officers Welch and Lonz. He did not feel free to leave. *Exhibit A* at ¶¶ 14-19. "A person is seized within the meaning of the Fourth Amendment when a reasonable person would believe that he or she is not free to leave." *Roska v. Peterson*, 328 F. 3d 1230, 1243 (10th Cir. 2003)(*citing Graham v. Connor*, 490 U. S. 386, 395 (1989); *Brower v. County of Inyo*, 489 U. S. 593, 599 (1989); *Florida v. Bostick*, 501 U. S. 429, 435 (1991)). A police action is deemed to be a seizure when a reasonable person must think he or she is unable to decline the officers' requests. See *Petersen v. Farnsworth*, 371 F. 3d 1219, 1222 (10th Cir. 2004). Surrounding Plaintiff with his back to a concrete planter restrained his movement. It was clear to him that he was not free to leave—doing so would have required him to make physical contact with a police officer. At a minimum, the material facts in dispute regarding Plaintiff's seizure on August 8, 2010 require that this claim proceed to a jury.

*II. Plaintiff was unreasonably seized on August 8, 2010 after he was handcuffed.*

**A.  There was no ongoing disturbance at the time that Plaintiff was handcuffed.**

Defendants admit that they handcuffed Plaintiff on August 8, 2010. They claim that they handcuffed Plaintiff because other people were becoming "incited." *Mot*. At p.11. Initially, Plaintiff will testify that the people present at the Fourth Street Mall had all calmed down prior to the officers' decision to handcuff him. *Exhibit A* at ¶¶ 20-34. Furthermore, Plaintiff disputes the claim that he continued to share food, although he does admit that he tried. The officers cannot justify their arrest of Plaintiff on August 8, 2010 based upon an "incited" crowd because this claim is disputed.

### B. Even if there were a disturbance being caused by third-parties, such a disturbance did not justify arresting Plaintiff under the community-caretaking function.

Defendants provide no precedent to support their contention that someone may be arrested because other people are misbehaving. It is likely that the officers would have been justified in detaining people who causing a disturbance. There is no legal justification, however, for arresting Plaintiff to keep other people from breaking the law.

The Tenth Circuit has expanded the community caretaking doctrine outside automobile searches to include situations when a citizen is briefly detained in a public place. *United States v. Garner*, 416 F.3d 1208, 1214 (10th Cir. 2005) (holding that officer properly exercised community caretaking function when he briefly detained man so fire department could examine him, where man was found lying in field next to apartment after caller informed police that man was unconscious); *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1029 n.4 (10th Cir. 1997) (concluding that officers properly detained citizen pursuant to community caretaking function when they observed distraught man on public sidewalk at night who smelled of alcohol and was crying with hands over face). The facts of the cases in this Circuit that allow detention of a citizen under the community-caretaking function seemingly all have one thing in common: the "caretaking" in question was directed toward the person being detained. Under the rationale advanced by Defendants, if a crowd that was "incited" by the presence of a celebrity or political figure, the police would be justified in handcuffing and placing that celebrity or politician in the secured cage of their police car. A reasonable officer should know that such an arrest would be unlawful and the same should apply to Plaintiff. He is not a celebrity, certainly, but neither was he causing people present to misbehave. On the contrary, he directed them to be calm, *Exhibit A* at ¶¶ 22-26, and they did so.

Defendants' Motion claims that "the Tenth Circuit law is clear that an officer may take reasonable steps to protect himself and has an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists and therefore officers would not have been on notice that the pat down search and the detention of Plaintiff was unreasonable in this regard." In support of this argument they cite to *United States v. Merkley*, 988 F.2d 1062 (10th Cir. 1993). However, *Merkley* is inapposite to this case. In *Merkley*, the Court upheld the reasonableness of stop when officers detained the defendant at gunpoint and placed him in handcuffs where suspect had threatened to kill someone and was pounding interior of truck with his fists. In other words, the law permits a police officer to detain suspect in handcuffs when that suspect might be a danger to bystanders. Merkley does not provide justification for detaining a law-abiding citizen in handcuffs because other people may be a danger to the officers. A reasonable officer was on notice that he may not detain one person in handcuffs because another person is allegedly acting in an unlawful manner.

### C. Defendants' cannot advance conflicting arguments. Their claim that the detention of Plaintiff was justified as an investigatory detention wholly undermines their community caretaking claim.

Defendants' Motion, p. 12, states that they advance two theories under which the detention of Plaintiff on August 8, 2010 was justified: community-caretaking and as an investigatory detention. However, by making the second claim, they necessarily undermine the first. In recognizing the community caretaking exception to the warrant requirement, the Supreme Court was clear that community caretaking functions are those that are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." . *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). It is impossible to argue that Officer Welch and Lonz were acting in a manner "totally divorced" from investigation and, at the same time, that they detained Plaintiff to investigate the possibility that he was breaking the

9

law. Given that Defendants have admitted, by advancing the second claim, that they were investigating the possibility that Plaintiff was breaking the law, the community caretaking argument is foreclosed to them.

### D. There was no basis to believe that sharing food separate from any commercial interest was illegal.

In moving for summary judgment, Defendants argue that a municipal ordinance, Section 9-6-1-7(A), required Plaintiff to have a permit to distribute food. As cited by Defendants, the statute in question clearly refers to the operation of a "food establishment." There is no dispute that Plaintiff was not a commercial business of any sort. No one, including Defendants, has ever contended otherwise. Defendants' argument essentially asks the Court to believe that they misunderstood the words "food establishment" to mean anyone sharing food with anyone else anywhere in the City. Plaintiff was not a "food service establishment" and Defendants do not claim that he was. The metropolitan criminal court agreed and dismissed the charge alleged against Plaintiff for distributing food without a permit. Although the criminal courts' holdings, at the metropolitan and the district level, do not collaterally estop Defendants from arguing that their actions were lawful, the decisions of these courts may be considered in evaluating Defendants' argument. After the metropolitan court dismissed the "distributing food without a permit" charge, Plaintiff sought a trial de novo on the charges of criminal trespass and failure to obey a lawful order. Following the trial de novo, the district court specifically held that there "no criminal conduct occurring with [Plaintiff]" when he was seen by police on September 12, 2010. *See Exhibit E to Plaintiff's Motion for Summary Judgment* at p. 2. The criminal court further described any belief by the police that a group needs a permit to distribute food in a public area as "mistaken." *Id*. The same should be true when considering the events of August 8, 2010.

### E. Officer Welch was personally involved in detaining Plaintiff on August 8, 2010.

Defendants argue that because Officer Welch did not personally place the handcuffs on Plaintiff on August 8, 2010, he was not personally involved in Plaintiff's detention. This reading of the personal-involvement requirement is too narrow. First, Plaintiff alleges and the facts, viewed in the light most favorable to him support, that he was detained prior to being handcuffed. Second, when Plaintiff was handcuffed, both Officer Welch and Officer Lonz were standing immediately in front of him. *Exhibit A*: ¶ 33. Although Officer Welch may not have applied the handcuffs, he assisted in detaining Plaintiff. Plaintiff should be permitted to proceed against Officer Welch based upon his own actions in so assisting.

### *III. Plaintiff does not contend that he was seized on September 12, 2010 prior to being told that he was under arrest.*

In their Motion, at pp. 11-12, Defendants argue that Plaintiff was not seized when Defendant Jara was questioning him. Plaintiff agrees. Plaintiff's claim for unreasonable detention does not arise, in the September 12, 2010 incident, until Officer Jara informed Plaintiff that he was under arrest. *Exhibit A* at ¶ 49.

### *IV. Plaintiff was unreasonably detained after he was told that he was under arrest.*

**A. Defendant Jara could not ignore her obligation to investigate the basis of the Criminal Trespass Notification, when the officer who had issued the notification, Defendant Welch, was at the scene at the time that she arrested Plaintiff.**

Defendants seek to justify the arrest of Plaintiff on September 12, 2010, by having one officer rely upon a previous officer's unlawful actions. Indeed, as the memo attached as Exhibit A to Plaintiff's Motion for Summary Judgment demonstrates, this was Defendants' plan from the get-go. Defendants were sent out to confirm that people, such as Plaintiff, who did not need permits did not have those unnecessary permits, then issue Criminal Trespass Notifications to

11

those people without regard for the illegality of those Notifications, and finally to arrest anyone caught sharing food with the hungry who had been unlawfully issued such a Notice. However, as set forth in Plaintiff's Motion for Summary Judgment, in making probable cause determinations, officers may err as to the credibility of witnesses, but "they may not ignore available and undisputed facts." *Id*. "[L]aw-enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances." *Kuehl v. Burtis*, 173 F.3d 640, 650 (8th Cir. 1999); *see also BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (A police officer "may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when, as here, it is unclear whether a crime had even taken place.")

Defendants violated those principles by arresting Plaintiff without so much as conducting an investigation into whether Plaintiff had committed any crime and whether there had been any lawful, legitimate basis for issuing the "Criminal Trespass Notification" to Plaintiff by Defendant Welch. Defendant Welch was at the scene. Defendant Jara could have easily determined that the criminal trespass notice was unlawfully based upon lawful behavior. Before arresting Plaintiff, a reasonable officer would have conducted an independent investigation to determine whether Plaintiff was suspected of a crime and, in this case, that investigation should have included asking Defendant Welch: "why did you issue a trespass notice" and "was the notice issued for the Fourth Street Mall." Either question would have quickly uncovered the fact that Plaintiff was not violating the law—the trespass notice was written for the address of a nearby business and, more importantly, the trespass notice was written without any lawful justification or authority to issue the notice. In fact, the logical inference, based upon the email sent to Defendants and based upon their continued insistence that a statute regarding "food

12

service establishments" applies and applied to Plaintiff, is that Defendant Jara was aware that the Criminal Trespass Notification was unlawfully issued to Plaintiff.

There is no dispute that Plaintiff was not violating the law by sharing food with the hungry. He was not violating the law on August 8th and he was not violating the law on September 12th. Without probable cause to believe that such a violation was occurring or had occurred (thereby necessitating the issuance of a criminal trespass notice) there was no justification to detain, much less arrest Plaintiff. Defendant Jara should not escape liability for arresting Plaintiff when she knew, or at a minimum failed to quickly investigate and thus learn, that the Criminal Trespass Notification issued to Plaintiff was unlawful.

### *V. Plaintiff's Excessive Force Claim should not be dismissed as de minimis. Defendant's Motion confuses the extent of injury with extent of evidence.*

Defendants are correct that the Tenth Circuit has held that an action for excessive force cannot be based upon a de minimis injury. However, their argument that even "accepting Plaintiff's version of events, his excessive force claim fails as a matter of law because there is no evidence of actual injury that is not de minimis, be it physical or emotional" is illogical. Whether or not an alleged injury is *de minimis* is not based upon the existence of evidence. A lack of evidence could preclude a claim of injury, *de minimis* or otherwise. Likewise a treasure trove of evidence of a *de minimis* injury would not make that injury actionable.

Plaintiff was violently yanked from a sitting position on a steel bench, with his hands cuffed behind his back, while he was offering no resistance to the search to which Defendant Kelly demanded that he submit. He landed on his back and elbows. Defendant Jara then jumped onto his chest and stomach and jabbed her fingers into Plaintiff's neck. Plaintiff's "version of events" *is* his evidence. He will testify to the abuse that he suffered. He did not tell the jailers at the detention center about the battery he endured. That does not mean that it did not happen or

13

that the injury he suffered from the attack was *de minimis*. The absence of evidence is not evidence that the injury was *de minimis*. Plaintiff must contend with the fact that his excessive force claim will boil down to his word against Defendants. That the only evidence available to him is his own testimony should not allow Defendants to face that liability at trial.

The "crime" for which Plaintiff was being held was no crime at all; Plaintiff posed zero threat to the officers; and he was not resisting them at all. *Graham v. Connor*, 490 U.S. 386, 396. There was no legitimate need for the force used against Plaintiff—indeed Defendants do not even advance any claim that the force used was necessary—and the limited evidence available to Plaintiff should not "disqualify" him from pursuing his well-pled claim for excessive force.

***VI. Plaintiff's Official Capacity Claims are based upon the fact that the violations of his Constitutional Protections were perpetrated on the "directives" given to Defendants by their supervisors.***

Plaintiff agrees with Defendants that an official-capacity suit is treated as a suit against the entity which in this case would be the City of Albuquerque. Mot. At p. 24 (*citing Kentucky v. Graham*, 473 U.S. 159 (1985)). An entity may be liable to a civil rights Plaintiff when the entity's policy or procedures are the moving force behind constitutional deprivations. *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court partially overruled *Monroe v. Pape*, 365 U.S. 167 (1961), by determining, upon a more extensive consideration of the legislative history of Sec. 1983, that local units of government may be "persons" potentially liable for constitutional violations. A city, for instance, falls within § 1983 as originally passed, if it "under color of any law, ... custom or usage ... shall subject, or cause to be subjected, any person ... to the deprivation of any rights, privileges, or immunities secured by the constitution...." *Id*. Interpreting this language and pertinent legislative history, *Monell* held that Congress plainly did not intend to impose vicarious liability on municipal

persons for their employees' torts. *Id.*. at 691. However, liability may be found if the official policy of the entity "caused" an employee to violate another's constitutional rights. *Id*. at 692. Thus, where, as in this case, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" the entity itself may be held liable. *Id*. at 690.

      The officers in this case were directed to confirm that Plaintiff did not have a permit that the law did not require of him, issue him a Criminal Trespass Notification even though there was no lawful basis for so doing, and arrest him if he appeared again to share food with others. The named Defendants did as they were told. Their actions were undertaken on the orders of their supervisors, which orders constituted an official policy of the City of Albuquerque. The entity in this case may be held liable and Plaintiff's official capacity claims should be permitted to proceed to a jury.

### *VII. Plaintiff agrees that his First Amendment Retaliation Claim should be dismissed.*

      Although Plaintiff's actions were undertaken out of his strong religious beliefs, he agrees that he cannot meet the legal standard required of him in order to proceed on his claim. Plaintiff therefore consents to the dismissal of his First Amendment Retaliation Claim.

      **WHEREFORE**, with the exception of the First Amendment Retaliation Claim brought in his Complaint, Plaintiff respectfully requests that Defendants' request that his claims be dismissed be denied and that this matter be permitted to proceed to a jury trial.

                                          Respectfully Submitted:
                                          **AEQUITAS LAW, LLC**

                                          /s/

By:    _____
                                          Anna C. Martinez
                                          Attorney for Plaintiff
                                          P.O. Box 25304
                                          Albuquerque, NM  87125
                                          (505) 750-8005
                                          anna@aequitas.pro

I HEREBY CERTIFY that a true and correct copy of the foregoing pleading was delivered to opposing counsel via the Court's CM/ECF document filing and delivery service on May 28, 2013.

/s/
_____
Anna C. Martinez