IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALFONSO HERNANDEZ,

      Plaintiff,

v.                                            CIV 12-394 KBM-ACT

DANIEL BACA et al,

      Defendants.

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' OPPOSED
MOTION FOR SUMMARY JUDGMENT REQUESTING DISMISSAL OF
PLAINTIFF'S COMPLAINT ON QUALIFIED IMMUNITY GROUNDS**

      **COME NOW**, Defendants David Baca (misidentified in the caption as "Daniel Baca")

Jennifer Jara, Leah Kelly, Jacob Welch, and the City of Albuquerque, by and through their

attorney, Assistant City Attorney Stephanie M. Griffin and hereby state the following for

Defendants' Reply to Plaintiff's Response to Defendants' Opposed Motion for Summary

Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds:

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF FACTS**

      When the Court reviews Plaintiff's response to the Statement of Facts ("SOF") set forth

by Defendants, it will find that Plaintiff does not dispute the majority of the facts and has not

cited, for the most part, to particular parts of materials in the record for purposes of attempting to

dispute facts.  Plaintiff clearly does not dispute SOFs 1, 5, 12, 16, 19, 21, 24, 25, 26, 27, 30, 31,

and 32.  It is uncertain as to whether Plaintiff actually disputes SOFs 2, 6, 7, 17, and 20 as it

appears from the record that he has not come forward with evidence to dispute these facts and

that any such purported dispute is immaterial.

With respect to SOFs 3 and 4, Plaintiff claims that he "denies" these facts; however, he has not set forth any evidence in accordance with Fed. R. Civ. P. 56(c)(1)(A) to support his denial.  Further, he asserts a hearsay objection to deny these facts.  Although the facts are premised upon hearsay evidence, it is well established that police officers may rely upon hearsay statements for purposes of establishing reasonable suspicion. *See United States v. Merritt*, 695 F.2d 1263, 1270 (10th Cir. 1982). Also,"[p]olice officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest." *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000)(citations omitted).  Consequently, his objection to SOFs 3 and 4 is without merit.

With respect to SOF 8, Plaintiff does not deny the factual averments, but rather makes a conclusory statement that he denies that he was free to leave based upon his on subjective beliefs. However, in determining whether or not a person is seized, it is the objective characteristics of the encounter and not the subjective perceptions of the person questioned which is analyzed.  *See California v. Hodari D*. 499 U.S. 621, 640 (1991); *Florida v. Royer*, 460 U.S. 491, 498 (1983); *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998).

With respect to SOFs 9, 10, 13, and 14, Plaintiff attempts to dispute some of these facts by making certain claims in his affidavit.  However, the facts which he purportedly disputes such as whether he ignored directives to stop serving food and the mood of the crowd is contradicted by the recording of the encounter as at least one person from the crowd can be heard shouting "Let's start a riot!" [See Exhibit D at Track 1, 12:54]

Although Plaintiff claims that SOFs 15 disputed, this purported dispute is not material to Defendants' motion.

With respect to SOF 18, Plaintiff contends that he had contact with Officer Kelly at the jail; however, even if this were true, the contact he claims took place does not amount to excessive force as a matter of law since Plaintiff has not suffered any injury which is beyond de minimus.  *See Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

With respect to SOF 22, Plaintiff sets forth argument about the address on the Criminal Trespass Notification in claiming that he denies that Officer Jara verified the existence of the notification.  However, Plaintiff's argument is misplaced as Defendants stated that Officer Jara verified the existence of the notification.  Defendants did not set forth argument as to the validity of the notification in SOF 22.  Plaintiff does not dispute that he was issued a criminal trespass citation as reflected in response to Defendants' SOF 14

With respect to SOF 23, Plaintiff does not really dispute this fact.  Instead, he denies that Officer Baca did not seize him.  However, in making this statement, Plaintiff misconstrues SOF 23.  Defendants did not say that Officer Baca did not seize Plaintiff.  Rather Defendants states that besides the actions describe in SOF, Officer David Baca "did not otherwise seize" Plaintiff. In other words, Defendants state that Officer Baca did not seize Plaintiff in any other manner than what is described in SOF 23.

Finally, although Plaintiff claims that SOFs 23, 28, 29, and 33 are disputed, he does not cite to evidence in the record as required by Fed. R. Civ. P. 56(c)(1)(A).

## LEGAL ARGUMENT

### I.  Seizure Analysis

Plaintiff begins the argument section of his brief by contending that he was seized at the outset during the August 8, 2010 encounter.  In support of his argument, Plaintiff, once again states in his brief that it was clear to *him* that he was not free to leave. [Doc. 34 at 7] However, as

already explained herein, in determining whether or not a person is seized, it is the objective characteristics of the encounter and not the subjective perceptions of the person questioned which is analyzed. *See Hodari D*. 499 U.S. at 640. The Tenth Circuit has traditionally found a seizure when there has been an officer's order coupled with at least some display of force or action by an officer as a means intentionally applied to control an individual's movements. *See, e.g., United States v. Fox,* 600 F.3d 1253 (10th Cir. 2010) (Seizure found with officer's order coupled with action of officer entering into person's car); *United States v. Salazar,* 609 F.3d 1059 (10th Cir. 2010) (Defendant was seized when Mr. Salazar's pickup started to go around Trooper Berner's patrol car, Trooper Berner stepped out of his car, drew his firearm, and yelled at Mr. Salazar to stop and get out of the pickup which he did.); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) (SWAT team brandished weapons and ordered plaintiffs to lie down on the ground); *United States v. King*, 990 F.2d 1552 (10th Cir. 1993)(seizure occurred when police officer ordered one defendant at gunpoint to place his hands on steering wheel or be shot after approaching defendants' automobile to warn them of traffic obstruction) There are no allegation that there has been any display of force coupled with action on part of the officers and therefore, from an objective standpoint, Plaintiff was not seized on August 8, 2010 until he was handcuffed as Defendants maintain.

## II.    Detention Analysis

With respect to the detention on August 8, 2010, Plaintiff claims that there was no ongoing disturbance to justify the detention in the first place. However, the recording of the encounter [Exhibit D] establishes that people were becoming upset when the officers were telling Plaintiff that he could not serve food unless he could produce a valid permit. [See Exhibit D at Track 1, 12:54] Consequently, it was reasonable for Plaintiff and the officers to be removed from

4

the crowd in order to maintain scene security. *See United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists.")  This notwithstanding, Officer Lonz, and not Officer Welch, placed Plaintiff in handcuffs and therefore he did not personally participate in any alleged constitutional infraction to the extent that Plaintiff claims that he was unlawfully seized by virtue of being placed in handcuffs.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

Plaintiff also misapprehends Defendants' community care-taking argument advanced in Defendants' summary judgment motion.  Defendants are not contending that the incitement of the crowd was the only justification for the detention, but a detention was also justified under the community care-taking doctrine.  Defendants contend that on both August 8, 2010 and on September 12, 2010, Officers Welch and Jara contacted Plaintiff to see if he had a permit to distribute food so as to ensure that he was serving food which was sanitary and safe because, as explained by Officer Lonz, people have been served poisonous food in the past.  [See Exhibit D-Belt Tape, Track 1 at 23:10 – 23:43] The officers were also inquiring about the permitting issue in response to complaints from the business community that the crowd of people being fed were urinating, and leaving trash and feces in the area.  Consequently, these officers were acting, independent of crime detection, in response to outcries from the community as well as over concerns for the health and safety of the persons being fed.  *See United States v. Garner*, 416 F.3d 1208, 1212 (10th Cir. 2005) (detention is authorized when officers are exercising "community caretaking functions" wholly separate and apart from detecting, investigating, or acquiring evidence of a crime).

5

**III.      Probable Cause Analysis**

With respect to the September 12, 2010 encounter, Plaintiff concedes that he was not seized until he was placed under arrest by Officer Jara.  [See Doc 34 at 11]  However, Plaintiff contends that there was no probable cause for his arrest because he contends that one officer relied upon the alleged *unlawful* actions of another officer to form the basis of probable cause. There is no evidence in the record to support such a claim.  Plaintiff also argues that Officer Jara conducted an inadequate investigation into the validity of the Criminal Trespass Notification. However, as explained in Defendants' Response to Plaintiff's summary judgment motion [Doc. 35], there was probable cause to arrest on the Criminal Trespass Notification.  Officer Jara had developed probable cause to believe that Plaintiff had committed the crime of Criminal Trespass since he was issued the Criminal Trespass Notification on August 8, 2010 which directed him not to return to the premises located on or about 110 4th Street. See NMSA 1978 § 30-14-1(C) ("Criminal trespass also consists of knowingly entering or remaining upon lands owned, operated or controlled by the state or any of its political subdivisions knowing that consent to enter or remain is denied or withdrawn by the custodian thereof.") The property which is "about" 110 4th Street is the Fourth Street Mall area which is owned by the City. [See Doc. 35-2]

The Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention. *Romero,* 45 F.3d at 1476-77. Officer Jara did this when she spoke to Officer Welch and then verified the existence of the Criminal Trespass Notification.  She also personally observed Plaintiff on the premises of the Fourth Street Mall.  As mentioned above, "[p]olice officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable

suspicion to justify an investigative detention or probable cause to arrest." *Oliver*, 209 F.3d at 1190.  Plaintiff has not presented any evidence to show that this reliance was unreasonable in order to establish that the arrest was not based upon probable cause. *See, e.g.,  Romero v. Fay*, 45 F.3d 1472 (10th Cir. 1995).  Also, absent special circumstances suggesting that a victim-witness is not credible, corroboration is not essential, and a police officer is permitted to assume he or she is dealing with a trustworthy person. *See United States v. Patane*, 304 F.3d 1013, 1017 (10th Cir. 2002), *reversed on other grounds*, 542 U.S. 630, 124 S.Ct. 2620 (2004); *see also United States v. Gagnon*, 635 F.2d 766, 768 (10th Cir. 1980).  Even if this Court were to find that somehow Officer Welch did not have reason to issue the Criminal Trespass Notification, Officer Jara would still be entitled to qualified immunity as a police officer who acts in reliance of what later proves to be flawed conclusions of a fellow police officer may be nonetheless entitled to qualified immunity as long as the officer's reliance was objectively reasonable. *See Baptiste v. J.C. Penney Co.* 147 F.3d 1252, 1260 (10th Cir. 1998).  Also, law enforcement officers who reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

## IV.    Application of *Cortez v. McCauley*

In arguing to keep his excessive force claim, Plaintiff argues that Defendants confuse the legal standard by which such claim may exist.  However, it is Plaintiff who is confused, not Defendants in this regard.  The Tenth Circuit law clearly states that for purposes of an excessive force claim there must be evidence of actual injury that is not de minimis, be it physical or emotional. *See Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).  Plaintiff does not have any medical records or photographs documenting any alleged injuries.  [See Exhibit A at 109:22-110:2] and he even concedes that he did not complain of any injury.  [Exhibit A at

110:13-22]  Therefore, Plaintiff's alleged excessive force claim does not meet the *Cortez* threshold in setting forth an injury which is beyond de minimus.

**V.      Analysis of Plaintiff's "Official Capacity Claims"**

Plaintiff claims that his "official capacity" claims should remain even though he has not pled any such claim on the face of his complaint.  There are no *Monell* allegations in the complaint [Doc. 1] setting forth that any alleged policy or custom was the "moving force" behind an alleged constitutional claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Instead, Plaintiff's official capacity claims are premised upon a theory of respondeat superior which is impermissible under Section 1983.  *See Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)(rejecting respondeat superior liability)  Therefore, Plaintiff's "official capacity" claims fail on their face.[1]

## CONCLUSION

**WHEREFORE**, based upon the foregoing arguments and authority cited herein and in Defendants' motion, Defendants request that this Court grant Defendants' Motion and Memorandum in Support for Summary Judgment Requesting Dismissal of Plaintiff's Complaint on Qualified Immunity Grounds.

---

**1** It should be noted that Plaintiff recently filed a separate lawsuit in *Hernandez v City of Albuquerque*, et al 13-cv-00521-LFG-ACT arising out of the same facts and circumstances wherein Plaintiff admits that he asserts a *Monell* claim among other claims in an effort subvert the Rule 16 amendment deadlines set in this case.  [See Doc. 1 at p. 4, ¶ 1413-cv-00521-LFG-ACT] Consequently, Defendants will be seeking leave of court to pursue a 28 U.S.C. 1927 motion in the present case.

Respectfully submitted,

CITY OF ALBUQUERQUE
David Tourek
City Attorney


/s/ Stephanie M. Griffin
Assistant City Attorney
P. O. Box 2248
Albuquerque, NM 87102
(505) 768-4500

*Attorney for Defendants*


I hereby certify that the foregoing was sent via Notice of Electronic Filing to:


Anna C. Martinez
Albert L. Hutchinson, Jr.
P.O. Box 25304
Albuquerque, NM 87125
(505) 750-8005
anna@aequitas.pro

*Attorneys for Plaintiffs*


on this 14th day of June, 2013.

/s/ Stephanie M. Griffin, Assistant City Attorney